Alright, our third case for this morning is Paul Murphy v. Deborah Rychlowski. So Mr. May it please the court as much as it pleases me to be here. Putting people on the sex offender registry through an ex parte procedure carried out behind closed doors, as was done here, violates their rights in two ways. First, they have a right to be heard on the decision before it is made. Second, they have a right to be informed of the process available to them. So could you answer one question for me? How does your case relate to our decision in the Shepard's case where a plaintiff was challenging the Indiana Department of Corrections procedures for correcting errors to the sex offender registry? Are you concerned about error correction or is this a more generic due process? We're concerned about due process before the error is made. And that due process is not going to be futile because in these decisions about whether to put people on the sex offender registry or not based on out of state events, most of the mistakes that get made are going to be mistakes of fact that could be avoided by giving a little precision. It doesn't have to be a full blown trial type hearing, but it has to be some opportunity to be heard in a meaningful way. So could you explain to me what you think the mistake of fact is here? I don't think there was a mistake of fact in this case. There was not. But I think you have to make your due process rules based on the whole range of cases of a similar nature. But if he didn't have a mistake of fact problem, that was my understanding of your brief too, that you thought they were reading the California law incorrectly and having it reflect over into the Wisconsin system incorrectly then. But that's just an issue of law. So why is he the right person to be complaining about due process designed to correct factual error? The due process clause isn't just there to correct factual errors. It's there to give the person that's on the verge of a deprivation of liberty or property the right to be heard. And that right can be valuable whether it's a factual error that could be made, whether it's an error of law that could be made, whether it's a discretionary decision. The due process clause doesn't make that distinction. Let me ask you this. Have you been able to identify any case within our circuit or from the Supreme Court that would have made it obvious to individual defendants that their actions would violate a clearly established right? Well, I think that the due process cases. Well, particularly in light of the fact that there was no factual error. So I'm trying to get to notice to the defendants and whether you understand. Okay, I think that the due process cases that talk about stigma plus make it very clear that the Wisconsin sex offender statute sets up a stigma plus situation. And that means you get a right to due process. So I guess maybe I should be more clear. Qualified immunity. Why aren't the defendants entitled to qualified immunity? First of all, as we explained, they waived it by not asserting it in the court below. Second of all, the principles upon which our case is based were clearly established. I want to give you an example of the degree of generality with which these principles have to be established in the law. Just last week, September 20th, this court issued an opinion in a prisoner mail case called Williams v. Hansen. It dealt with the qualified immunity argument in one paragraph. And it stated the general principle of law that prisoners have the right not to have their mail confiscated absent some legitimate penological reason. And that general rule of law was enough for this court to deny the defense of qualified immunity in that case. We've got rules of law about the stigma plus doctrine and noting that there's a liberty interest in sex offender registration schemes where there are legal burdens imposed in addition to reputational injury. And it's very clear that under the stigma plus cases, you get due process if you're looking at a stigma plus sanction from the government. But here's a good example, and you gave the example of the prison mail. If the law had simply said, you know, prisoners have First Amendment rights, that's at a pretty high level of generality. There have, in fact, been cases about mail in the prisons. So in your case, of course, there's Paul v. Davis. There's the stigma plus idea. It's understood in the law. But to make it require the various Department of Corrections people here who thought, you know, that they'd gotten information from California about the conviction. California has this rule designed to avoid, you know, extraterritorial effect of its law. So what that means is maybe a little unclear. But at one point, the argument was made in this case that the due process that you're entitled to is actually what you get through the process of the criminal conviction. And then you serve your term, and there are these collateral consequences. And believe me, I totally agree with you that the collateral consequences on these sex offender registries are incredibly burdensome. So you don't need to convince me of that. But the Supreme Court has upheld these kinds of registries. And so anyway, a prison official could think that the due process has been taken care of. And if they mistook a California conviction for rape, for an Arizona conviction for shoplifting, you know, somebody's just going to have to correct it after the fact. I mean, so would the prison people think that there was a due process flaw if the only thing they know is that Paul v. Davis is out there and people get pre-deprivation process if there's stigma plus? Yes, unless there's some reason that that general rule should not apply where there's stigma plus in this situation. Suppose this. Suppose somebody was thinking about the line of cases that say that we give great deference to prison administrators and people's situations once they're in prison in terms of their ability to exercise constitutional rights. Think of Turner against Safley, for example, is just one that pops into my head. So a prison official might think that there is a slightly different way to apply these rules in the prison context. Those deference cases apply only to discretionary decisions, I think. I don't think they apply to legal decisions. And this isn't a case involving the administration of a prison in any event. It's the criminal justice system for sure. What will happen as you depart the prison and move out into your supervised release or your probation or parole or whatever it's called? I don't think any of those cases make inroads into the stigma plus doctrine of due process. So what you envision is that as each prisoner, and maybe this is a perfectly good system. I'm not saying it couldn't happen. But you envision that before every prisoner is released, there's a hearing. And at the hearing, it's explored whether the prisoner has any qualifying sex offense in his or her background. And if so, the prisoner has to be told, you have this offense. You're going to be on the Wisconsin, if it's Wisconsin State Registry. He has to say, no, I want to submit a brief explaining why I shouldn't be. And there needs to be that process before he leaves the prison. No. I don't think this has to apply to the release of prisoners at all. Why not? Now I really don't understand you. Because that's when he was put on the registry here. This guy, right. But the thing that I'm talking about is not the release from prison so much as the decision to put him on the registry. It happened to occur a couple days after he got released from prison here or a couple days before. But it could have occurred a year after. And it did occur in this case, again, when he was off the registry for years. They put him back on.  But you would, at a minimum, have to include them, it seems, because that would be the most typical time this decision would be made. Well, not everybody that's being released from prison would be affected by a rule that says to the Department of Corrections, if you're planning or if you're thinking about putting somebody on the sex offender registry, you've got to let them know and give them a chance to be heard. That doesn't apply to the great majority of prisoners being released, just those that the department is contemplating putting on the sex offender registry. Okay, so you're narrowing down my hearings to, you know, the Department of Corrections makes a tentative decision, let's say, that a particular person, Mr. Murphy, needs to be put on Wisconsin's registry because of his prior California offense and people like that for whom the tentative decision has been made get the hearing. Yes, they would get some kind of notice and some kind of opportunity to be heard. Maybe initially just to register an objection and some kind of rudimentary elementary session, like in Cleveland v. Laudermill, at least. I'd like to save the rest of my time. Okay, that's fine. Mr. Roth. May it please the Court. Good morning. I'd like to step back for a minute and just take a second to look at the statutes that are at issue here because I think the California and Wisconsin statutes, if you examine how they work, they resolve this case very simply. Mr. Murphy was convicted of rape in California. California has a sex offender registry statute that operates automatically when an individual is convicted of a qualifying offense, they're placed on the registry. So these are the conviction-based systems, right? Yes. That was the Supreme Court directly considered in Connecticut v. Doe and decided that those kinds of systems do not entitle offenders to a preregistration hearing. Because the criminal process has provided whatever due process. Exactly. Mr. Murphy was entitled to his process to dispute the conviction at his trial. When he was placed on the registry, no more facts were at issue. Those facts had already been decided in his criminal trial. Now Mr. Murphy moves to Wisconsin. Wisconsin has a very similar statute that applies to offenders who commit the sex offense in the state that requires them to register automatically. For out-of-state registrants, it has a very similar process where it looks simply at the fact of whether the offender is registered in another state. There are no more facts to be determined. No active discretion is made by the Department of Corrections official. They simply look at the fact of registry in California in this case, which in turn depended on the fact of conviction. And this falls squarely within Connecticut v. Doe, which holds that where there are no more material facts to be presented before you're placed on the registry, there's no need for a hearing. But then you get this quirk of California law, which isn't reflected in every state's law. This is, I'm looking at the response that Carrie Ramos sent to the inquiry. It's on page 15 of Mr. Olson's brief, who says he's required to register for life pursuant to the California law while residing, working, or attending school in California. When he moves, the record remains active, but it says he's relocated out of state, and his information is removed from the Megan's Law website. So it appears in the aggregate to say that after he moves from California, he doesn't need to continue doing things for his California registry because he's not residing, working, or attending school in California anymore. It creates an ambiguity, and so if he has no California obligation, why does he have a Wisconsin obligation? Well, the first thing I'll say is, Mr. Murphy, if he resided in California, his conviction of rape is a lifetime registration. No, I understand that, but he doesn't reside in California. What would happen if he returned to California? His registration requirements would kick in. He would be required to submit updates. The only reason it's not public is he doesn't have a California address. Right, and Wisconsin law does require if you have a qualifying offense in another state that requires you to register for life, you also remain on Wisconsin's registry for life. What I'd like to do is step back for a second. So basically, I don't want you to step back for a minute because the critical thing is the offense, or the critical thing could be, because the offense renders him subject to lifetime registration in California if he were to stay in California. Wisconsin is reading that as kind of classifying the offense. Wisconsin is looking at that offense and saying, well, if that's what California thinks of the offense you committed there, then we think the same thing. We're going to put you on our registry, too. We don't really care if you have to keep up with California whether you're on our registry or not. That's exactly right, and that's the legal position that the state of Wisconsin takes. And what I point out is there's not a single case that Mr. Murphy has cited where the due process clause entitles an individual to present that kind of legal argument before a deprivation occurs. You pointed to the Shepard's case, and again, in that case, at issue was a dispute of fact. And Mr. Murphy, in his briefs to this court, he concedes in this particular case the facts are undisputed. There's no dispute that he committed this offense in California. There's no dispute that he remains on one of the California registries. There's no dispute that his California offense would require him to register for life. So I understand that argument, but here's what bothers me about it. More often than not, I think, this court is giving people hearings on questions of law. We don't say to them, well, all the facts have been resolved by the district court, and you don't need to come to us to have your say on what the law requires. People value the say to brief legal questions very much. I don't know whether it's the same amount as factual questions, but maybe even more sometimes. And so to say that the facts have been resolved, and so the private interest in expressing oneself to the decision-maker evaporates, I don't see that in Matthews against Eldridge. It's a broader proposition than Matthews is talking about, and it seems to me we don't really want to go down that path. Well, I guess what I will say is Mr. Murphy does have a time and a place to address his legal argument. But he has to wait until he's been on this registry. And as you well know, we all, unfortunately, are reminded of this practically every day. Once something is out on the Internet, it's awfully hard to call it back again. They're worrying in Europe about a right to be forgotten, but we don't have that right in the United States, not at the moment. So even, I suppose, just for the sake of argument, he was put on the sex offender registry in Wisconsin as a result of a legal error. He's on it for however long. Let's suppose a lightning-fast procedure. It takes him only three months to get it sorted out. Seems to me wildly optimistic, but maybe three months. Then he's fixed. He's not on the registry anymore. But there's three months' worth of information out there on the Internet. Would it ever go away? Surely he has some concern about that. Well, what I would say is Mr. Murphy's protected liberty interest under the Paul B. Davis test is not the reputational effect of being placed on the registry.  They can't live in certain places within the school. That's correct, that's correct. But what Mr. Murphy could do is when he's released, he receives notice, as he did in this case. He can go to state court. He could obtain a preliminary injunction, perhaps, that would prevent the state from putting him on the registry. Alternatively, if the state had put him on the registry and he won his case, the collateral consequences would be removed. And it's true that there would be a period of time when he was placed on the registry, but as the case is made clear, that's not what the Due Process Clause protects. It protects against the improper imposition of the collateral legal consequences that follow from being placed on the registry. And those can be removed through his state court hearing, which is the most appropriate place to advance this kind of legal argument that he's asserted. It's frankly – So is it your position that there's never any due process requirement if you could just go to the state court and sue? Well, no, I mean, we – I mean, surely there are administrative due process situations, and this looks a lot like an administrative decision. There may be cases where some process is required, but Mr. Murphy is simply not one of those cases. As you've pointed out, he's not disputing facts. I mean, this is what the main of due process cases concern, all the cases he's cited. Someone wants to go before the decision maker to present disputed facts that are relevant to an exercise of discretion. You know, the decision maker can decide whether or not to deprive the individual of some disputed interest. Here, there's nothing of the sort. There's no discretion granted to the Department of Corrections decision makers here. He has no facts that he needs to present. The decision maker in the Department of Corrections looks at the same categorical facts that were at issue in Connecticut v. Doe and essentially just makes an automatic decision to place him on the registry. So I'm going to make one other remark about this case. I mean, I think actually the essence of his complaint is he doesn't like the way Wisconsin is reading Wisconsin law. But based on the Connecticut Department of Corrections case, I don't see anything that says Wisconsin is not entitled to have a substantive rule about the registry of this type. And if his argument is essentially Wisconsin has the wrong law, then we're the wrong forum. I agree, and this sort of gets into the second line of cases that we discuss, Tenney v. Blagojevich and Germano from this court, which essentially say when an individual's dispute is with a state interpreting and applying state law, the right place for that dispute is state court. Well, Pennhurst and other cases say much the same. Sorry? Pennhurst and other cases say much the same. Oh, exactly right. And I would point out also with respect to the qualified immunity issue that was raised, that also disposes of this case. The only remedy he seeks is damages, is cases against these Department of Corrections officials in their individual capacity. In his reply brief, he does briefly raise the prospect of an order from the court. Even if qualified immunity bars damages, maybe the court can issue some sort of equitable decision directing him to be taken off the registry. But I think you're exactly right that the 11th Amendment in Pennhurst would bar that type of relief. So the only thing that we're looking at here is damages, and I think qualified immunity just simply knocks those out of the park. Right, and I wanted to ask you about that because I didn't see a waiver, and when you argued it in your brief, in his reply he made other arguments, a stigma plus type argument, and you mentioned in your brief the district court didn't reach qualified immunity. I just want to check on your view of whether or not there was waiver. Yeah, I mean, I think qualified immunity is clearly asserted in our answer to the complaint was raised in the opening brief. Mr. Murphy made some arguments in response. We adjusted in our reply brief, clearly made the qualified immunity. It was fully briefed in the district court. It was obviously not a basis for the decision. Right. It's been fully briefed in this court. I think there's no question that it was validly raised and would be an alternative basis to affirm the district court's decision. If you have no further questions. Apparently not. Thank you very much. Mr. Olson, so what was the basis of your response to my question to say that, you know, they had waived it? Here it is. Qualified immunity was waived by the defense and the district court because when we move for summary judgment, they move for summary judgment. In their initial brief, they said it's not clearly established that Mr. Murphy is not supposed to be on the sex offender list. That says nothing about our due process argument. They didn't say anything about whether our due process rights that we're asserting were clearly established until their reply brief. That was waived because it was asserted for the first time in the reply brief. And it's only a sentence. So it was waived by not being developed or explained. And I would also point out that we mentioned qualified immunity in this court for the first time in our reply brief because it wasn't reached by the district court and it wasn't argued below. It was waived below by inattention by the state. But we want to point out here as we do in our reply brief that it doesn't apply to claims for equitable relief. So even if it were to bar a damages remedy, it would not bar declaratory or injunctive relief. Mr. Murphy is not required to register in Wisconsin for three reasons under the Wisconsin statutes with which we do not take exception. Accepting these statutes as they're written, he's not required to register. He's passed the sentence-based registration requirement of section 301.45 sub 1g sub g. That would have required him to register in Wisconsin for a period of time based on his California conviction, even if California didn't have a sex offender registration system at all. He'd have to register in Wisconsin for a period of time after he was released from prison. He's well past that period of time. He's not required to register in Wisconsin under the preceding paragraph, sub 1g sub f, because he's not registered in another state. What he's on is the California sex and arson registry. That's not California's sex offender registry under the federal law scheme that all the states participate in, because if it were California's sex offender registry, it'd have to be on the Internet, and he would have to register on a routine basis in California, and he does not. But if he went back to California, he would have to register. The only reason he doesn't have to is because he's not living there at the moment. Correct, and that brings me to my third reason why he's not required to register, and this is independent of whether the California sex and arson registry is the state's sex offender registry, even if it were. Why couldn't Wisconsin so regard it if it wanted to? Well, because for the points we make in our briefs, that it doesn't fit the requirements of a sex offender registry under state and federal law. But Wisconsin has a whole different provision at 301.45 sub 5 M sub B, which is the provision about getting off, or as the defense says, release from the sex offender registry, and the defense acknowledges in their brief that this is an independent basis for release from the registration requirement, and it says you're not required to register in Wisconsin if you're not required to register in that other state. It doesn't say you're required to register in Wisconsin if you went back to California, you'd have to register there. So here's my issue. I know time is getting short. What concerns me about that argument isn't whether it's a good argument or not, but whether we are the right parties, because you are arguing about the scope and interpretation of Wisconsin law, and it strikes me as a substantive argument, not a due process argument, and I don't know what external constraint there is on Wisconsin to have whatever law it wants to have, or at least within the range that we're talking about. So what tells Wisconsin it's not allowed to interpret the law that you just read, or all three of them, to require Mr. Murphy to register? Well, if the Wisconsin Supreme Court wanted to read words that aren't there into this third provision I've just been talking about, they could probably do it in this court. It wouldn't be the only time a court has clarified a law. I mean, I understand your point that you think it's crystal clear and there's no way the state would do anything different, but apparently the state officials charged with administering this law have seen it differently, so that's our problem. It's not even clear that they confronted this precise question because there was never an adversary proceeding, and it wasn't state officials at any high-ranking level. It was technocrats in an office somewhere. So it's not like you're up against some state court holding. It's not even a circuit court holding. All right, well, thank you very much, Mr. Olson. Thanks to both counsel. We'll take the case under advisory.